*13m -5033-JGD*

# AFFIDAVIT OF MICHAEL J. CONNELLY
## IN SUPPORT OF AN APPLICATION FOR AN ANTICIPATORY SEARCH WARRANT

I, Michael J Connelly, being first duly sworn, hereby depose and state as follows:

## INTRODUCTION AND BACKGROUND

1. I am an Inspector with the United States Postal Inspection Service (USPIS) assigned to the Boston Division, in Boston, MA, having been so employed since 2007. As a Postal Inspector, I am responsible for the investigation of federal criminal offenses involving the transportation, distribution, receipt, and sale of child pornography through United States mail in violation of Title 18, United States Code, §§ 2252 and 2252A. I have completed the USPIS Basic Inspector Training (BIT) program in Potomac, MD and have conducted and assisted in numerous investigations into the violation of both state and federal laws including mail & wire fraud, identity theft, and, child pornography. I am also an affiliate member of the Rhode Island Internet Crimes Against Children (ICAC) Taskforce and routinely work with agents, troopers, and officers with dozens of years of experience investigating crimes involving the sexual exploitation of children. I have received training in the investigation of crimes involving the sexual exploitation of children by attending both seminars and courses. I have investigated child pornography cases and related sexual offenses on a full time basis since approximately May 2011.

2. As a federal agent, I am authorized to investigate violations of laws of the United States and to execute warrants issued under the authority of the United States.

3. I have conducted and participated in numerous investigations relating to the possession, receipt, transportation, distribution and production to child pornography and obscene visual representations of the sexual abuse of children over the Internet and the U.S. Mail. I have received training in the investigations relating to the sexual exploitation and physical sexual abuse of minors. I have reviewed hundreds of images and videos of actual and suspected child pornography, child erotica, and obscene visual representations of the sexual abuse of children.

4. This affidavit is being submitted in support of an application for an anticipatory search warrant to search the residence of Thomas Britto (Britto) located at 195 Harvard Street, New Bedford, MA 02746 (the "SUBJECT PREMISES"), as described in Attachment A, because there is probable cause to believe that it contains evidence, fruits, and instrumentalities of the crimes listed above, as described in Attachment B.

5. Because this affidavit is being submitted for the limited purpose of securing a search warrant, I have not included each and every fact known to be me concerning this investigation. I have set forth only those facts that I believe are necessary to establish probable cause to believe that evidence of violations of 18 U.S.C section 2252(a)(2) (receipt or attempted receipt of child pornography) and 2252(a) (4)(B) (possession of child pornography) will be found at the Subject Premises. The purpose of this application is to seize evidence, more particularly described in Attachment B, of violations of 18 U.S.C. section 2252(a)(2) and (a) (4) (B), which make it a crime to possess and receive child pornography.

## **DEFINITIONS**

6.      The following definitions apply to this Affidavit and its Attachments:

a.      "Child" means "minor," as defined by 18 U.S.C. § 2256(1) (any person under the age of eighteen years).

b.      "Child Erotica," as used herein, means materials or items that are sexually arousing to persons having a sexual interest in minors but that are not, in and of themselves, obscene or that do not necessarily depict minors in sexually explicit poses or positions.

c.      "Child Pornography," as used herein, is defined in 18 U.S.C. § 2256 (any visual depiction of sexually explicit conduct where (a) the production of the visual depiction involved the use of a minor engaged in sexually explicit conduct, (b) the visual depiction is a digital image, computer image, or computer-generated image that is, or is indistinguishable from, that of a minor engaged in sexually explicit conduct, or (c) the visual depiction has been created, adapted, or modified to appear that an identifiable minor is engaged in sexually explicit conduct).

d.      "Computer," as used herein, is defined pursuant to 18 U.S.C. § 1030(e)(1) as "an electronic, magnetic, optical, electrochemical, or other high speed data processing device performing logical or storage functions, and includes any data storage facility or communications facility directly related to or operating in conjunction with such device."

e.      "Computer equipment" means any computer hardware, computer software, computer-related documentation, storage media, and data.

f.      "Computer hardware," as used herein, consists of all equipment which can receive, capture, collect, analyze, create, display, convert, store, conceal, or transmit electronic, magnetic, or similar computer impulses or data. Computer hardware includes any data-processing devices (including, but not limited to, central processing units, internal and peripheral storage devices such as fixed disks, external hard drives, floppy disk drives and diskettes, and other memory storage devices); peripheral input/output devices (including, but not limited to, keyboards, printers, video display monitors, cameras, and related communications devices such as cables and connections), as well as any devices, mechanisms, or parts that can be used to restrict access to computer hardware (including, but not limited to, physical keys and locks).

g.      "Computer software," as used herein, is digital information which can be interpreted by a computer and any of its related components to direct the way they work. Computer software is stored in electronic, magnetic, or other digital form. It commonly includes programs to run operating systems, applications, and utilities.

h.      "Computer-related documentation," as used herein, consists of written, recorded, printed, or electronically stored material which explains or illustrates how to configure or use computer hardware, computer software, or other related items.

i.      "Computer passwords and data security devices," as used herein, consist of information or items designed to restrict access to or hide computer software, documentation, or data. Data security devices may consist of hardware, software, or other programming code. A password (a string of alpha-numeric characters) usually operates as a sort of digital key to "unlock" particular data security devices. Data security hardware may include encryption devices, chips, and circuit boards. Data security software of digital code may include programming code that creates "test" keys or "hot" keys, which perform certain pre-set security functions when touched. Data security software or code may also encrypt, compress, hide, or "booby-trap" protected data to make it inaccessible or unusable, as well as reverse the progress to restore it.

j.      "Data" means all information stored on storage media of any form in any storage format and for any purpose.

k.      "Internet Service Providers" (ISPs), as used herein, are commercial organizations that are in business to provide individuals and businesses access to the Internet. ISPs provide a range of functions for their customers including access to the Internet, web hosting, e-mail, remote storage, and co-location of computers and other communications equipment. ISPs can offer a range of options in providing access to the Internet including telephone based dial-up, broadband based access via digital subscriber line (DSL) or cable television, dedicated circuits, or satellite based subscription. ISPs typically charge a fee based upon the type of connection and volume of data, called bandwidth, which the connection supports. Many ISPs assign each subscriber an account name – a user name or screen name, an "e-mail address," an e-mail mailbox, and a personal password selected by the subscriber. By using a computer equipped with a modem, the subscriber can establish communication with an ISP over a telephone line, through a cable system or via satellite, and can access the Internet by using his or her account name and personal password.

l.      "Internet Protocol address" or "IP address" refers to a unique number used by a computer to access the Internet. IP addresses can be dynamic, meaning that the Internet Service Provider (ISP) assigns a different unique number to a computer every time it accesses the Internet. IP addresses might also be static, if an ISP assigns a user's computer a particular IP address which is used each time the computer accesses the Internet.

m.      "Minor" means any person under the age of eighteen years. See 18 U.S.C. § 2256(1).

n.      "Producing," as used herein, is defined by 18 U.S.C. § 2256(3) (producing, directing, manufacturing, issuing, publishing, or advertising).

o.  A "record" means any communication, representation, information, or data. A "record" may be comprised of letters, numbers, pictures, sounds, or symbols.

p.  "Sexually explicit conduct" means actual or simulated (a) sexual intercourse, including genital-genital, oral-genital, or oral-anal, whether between persons of the same or opposite sex; (b) bestiality; (c) masturbation; (d) sadistic or masochistic abuse; or (e) lascivious exhibition of the genitals or pubic area of any person. See 18 U.S.C. § 2256(2).

q.  "Storage media" means any media capable of collecting, storing, retrieving, or transmitting data (such as a hard drive, CD, DVD, or memory card).

r.  "Visual depictions" include undeveloped film and videotape, and data stored on computer disk or by electronic means, which is capable of conversion into a visual image. See 18 U.S.C. § 2256(5).

## APPLICABLE STATUTES

7.  Title 18 United States Code, Section 2252 makes it a federal criminal offense for any person to knowingly distribute, receive, transport, or possess, or attempt to do so, any visual depiction using any means or facility of interstate or foreign commerce or that has been mailed, or has been shipped or transported in or affecting interstate or foreign commerce, or which contains materials which have been mailed or so shipped or transported, by any means including by computer, if the producing of such visual depiction involved the use of a minor engaging in sexually explicit conduct and such visual depiction is of such conduct.

8.  18 U.S.C. § 2252A makes it a federal criminal offense for any person to knowingly receive or attempt to receive

> (A) any child pornography that has been mailed, or using any means or facility of interstate or foreign commerce shipped or transported in or affecting interstate or foreign commerce by any means, including by computer; or
>
> (B) any material that contains child pornography that has been mailed, or using any means or facility of interstate or foreign commerce shipped or transported in or affecting interstate or foreign commerce by any means, including by computer.

## BACKGROUND ON COMPUTERS AND CHILD PORNOGRAPHY

9.  Computers and digital technology have revolutionized the way in which individuals interested in child pornography interact with each other. In the past, child pornography was produced using cameras and film (either still photography or movies). Developing and reproducing the photographs required darkroom facilities and a significant amount of skill, and involved definable costs. In addition, the photographs themselves were somewhat bulky and required secure storage to prevent their exposure to the public. Distribution

was accomplished through a combination of personal contacts, mailings, and telephone calls. Thus, distributing child pornography on any scale used to require significant resources.

10. The development of computers and digital cameras, however, has caused fundamental change in four basic ways: production, communication, distribution, and storage.

11. Child pornographers can now transfer printed photographs into a computer-readable format with a device known as a scanner. Furthermore, digital cameras save photographs they take as digital files that can be directly transferred to a computer simply by connecting the camera to the computer. In the last ten years, the resolution of pictures taken by digital cameras has increased dramatically, thereby making photos sharper and crisper. Photos taken on a digital camera are often stored on removable memory cards, which often store up to 4 gigabytes of data and provide enough space to store over 1000 high-resolution photographs. Video camcorders, which once recorded video onto tapes or mini-CDs, now can save video footage in a digital format directly to a hard drive within the camera itself. The video files also can be transferred from the camcorder to a computer with ease.

12. The Internet has drastically changed the method of distribution and receipt of child pornography. A device known as a modem allows any computer to connect to another computer through the use of a telephone, cable, or wireless connection. Electronic contact can be made by computer to literally millions of other computers around the world. Such connections allow individuals to produce child pornography easily, reproduce it inexpensively, and market it anonymously (through electronic communications). Child pornography can be transferred via electronic mail or through file transfer protocols (FTPs) to anyone with access to a computer and modem. Because of the proliferation of commercial services that provide electronic mail service, chat services (i.e., "Instant Messaging"), and easy access to the Internet, the computer is a preferred method of distribution and receipt of child pornographic materials.

13. The computer's ability to store images in digital form makes the computer itself an ideal repository for child pornography. The size of the electronic storage media (commonly referred to as the hard drive) used in home computers has grown tremendously within the last several years. These drives can store thousands of images at very high resolution. In addition, numerous options for the storage of computer or digital files now exist. 500 gigabyte external and internal hard drives are not uncommon. Other media storage devices include CDs, DVDs, and "thumb," "jump," or "flash" drives, which are small devices that are plugged directly into a port on the computer. An individual can easily take a photo with a digital camera, upload that photo to a computer, and then copy it (or any other files on the computer) to any one of those media storage devices. (CDs and DVDs are unique in that special software must be used to save or "burn" files onto them.)

14. The Internet provides several different venues for obtaining, viewing, and trading child pornography in a relatively secure and anonymous fashion.

15. Individuals also use online resources to retrieve and store child pornography, including services offered by companies like Yahoo! and Hotmail, among others. These online service providers allow a user to set up an account with a remote computing service that provides

e-mail services, as well as electronic storage of computer files in any variety of formats. A user can set up an online storage account from any computer with access to the Internet. Even in cases where online storage is used, however, evidence of child pornography can be found on the user's computer or external media in most cases.

16. As in the case with most digital technology, communications by the way of computer can be saved or stored on the computer used for these purposes. Storing this information can be intentional, i.e., by saving an email as a file on the computer or saving the location of one's favorite websites in, for example, "bookmarked" files. Digital information can also be retained unintentionally, e.g., traces of the path of an electronic communication may be automatically stored in many places (e.g., temporary files or ISP client software, among others). In addition to electronic communications, a computer user's Internet activities generally leave traces or "footprints" in the web cache and history files of the browser used. Such information is often maintained indefinitely until overwritten by other data.

## BACKGROUND OF INVESTIGATION OF "COA COMPANY" AND "INTERNATIONAL COMPANY"[1]

17. U.S. Postal Inspector Paul Suboyu of the Cleveland Field Office, Cleveland, Ohio, as part of a separate investigation, identified a business that sold "coming of age movies" ("COA Company") and was and currently is the target of an FBI investigation involving the possible distribution of child pornography. The company offered for sale, via US Mail, DVD movies depicting nude pre-pubescent minors. On or about November 2011, Thomas Britto was identified as sending a US Mail priority mail piece to that same business. The contents of the mailing are unknown.

18. Additionally Postal Inspectors queried Britto in law enforcement databases available to the US Postal Inspection Service. This query identified Britto as having placed several orders with an "International Company" known to law enforcement to distribute child erotica and child pornography via both computer downloads as well as the US Mail.

19. Specifically, between February 5, 2010 and April 9, 2010, eight (8) separate orders for child erotica DVDs and computer downloads were placed with the "International Company" in the names of Thomas Britto and Nathalia Oglesby. A query of Nathalia Oglesby using open source internet tools indicate that Oglesby was Britto's mother who died February 5, 2013 at the age of 80. The address used for two (2) of the orders was 195 Harvard Street, New Bedford, MA. The other six (6) orders listed two other addresses that public records inquiries indicate are prior addresses for Britto. Only one (1) of the orders was fulfilled and the other seven (7) were canceled prior to shipment[2]. The individual who placed the orders supplied the email addresses of eddarron@verizon.net or eddarron@hotmail.com for the electronic receipts of purchase in all eight (8) of the orders to the "International Company".

---

[1] The "International Company" is the target of an ongoing international investigation into child exploitation offenses. To maintain the confidentially and integrity of the investigation in this operation, specific names and other identifying factors have been replaced with generic terms.
[2] The address used in the completed order for the DVD from the "International Company" appears to be a prior address of Britto according to public record searches.

20.     Your affiant knows through training and experience that those individuals having an interest in child erotica also have and interest in child pornography.

## UNDERCOVER OPERATION AND BASES FOR PROBABLE CAUSE

21.     On or about February 15, 2012, acting in an undercover capacity USPIS Inspector Suboyu mailed an undercover advertisement to the SUBJECT PREMISES. Due to the ongoing investigative activity of this USPIS undercover operation, the identity of the undercover operation will be referred to as the "undercover operation".

22.     The mailed "undercover operation" advertisement was addressed to 195 Harvard Street, New Bedford, MA 02746 U.S.A. The "undercover operation" provided the customer a one-page flyer advertising the company to include the following statements:
*"Don't be left alone in the dark!!! You're invited!!... Become a customer of [the "undercover operation," an] underground leader in TABOO and FORBIDDEN XXX videos!!"*

23.     The "undercover operation" provided instructions on how to request a catalogue which would list the videos offered for sale, organized by category. The directions on the catalogue request form were to remove a portion of the flyer and return it the address provided for the "undercover operation." The form provided a section for the customer to fill in the catalogues he or she wished to receive as well as a section for the customer to write their name, address, and email address.

24.     On or about March 2, 2012, Inspector Suboyu received, via the US Mail, an envelope addressed to the "undercover operation" containing the completed catalogue request form of the undercover advertisement. The envelope was post marked Providence, Rhode Island on 25 FEB 2012 and attached to the envelope was a printed return address label in the upper left corner of the envelope in the name of:

*Thomas Britto*
*195 Harvard Street*
*New Bedford, MA 02746*

25.     The envelope contained the catalogue request form, on which was marked an interest in receiving catalogues from the following options:

*Pre Teen Boys*
*Young Teen Boys (13-16)*
*Young Teen Girls (13-16)*
*Incest & Family Love – Adult and Pre & Young Teen*
*Hidden Camera & Voyeur*

The following information was hand written in the customer portion of the form:

*Thomas Britto*
*195 Harvard St*
*New Bedford Ma 02746 U.S.A*
*EddAaron@hotmail.com*

EddAron@hotmail.com was one of the two email addresses used for receipt of purchase supplied to the "International Company" in early 2010 referenced in paragraph 17 above.

26. On or about March 2, 2012, in response to the request for a catalogue from the "undercover operation", Inspector Suboyu sent an email to the address of eddaaron@hotmail.com a movie order form and a listing of movies available. Additionally, the "undercover operation" sent a printed movie order form, via US Mail, to the SUBJECT PREMISES. The undercover mailing and email contained identical information: a movie order form, a one (1) page catalogue of videos entitled "Up Skirt & Hidden Camera & Voyeur" as well as a two (2) page catalogue of videos entitled "YOUNG TEEN & PRE TEEN & INCEST/FAMILY LOVE (all ages are real!! We do not use actors!!)."

27. The following is a sample of the movie descriptions from the two (2) page Young Teen etc. catalogue mailed from the "undercover operation":

[Four movie listings (Movies #8, #16, #41, #52) containing explicit descriptions of child sexual abuse are omitted here; they describe sexual acts involving children identified as being between approximately 8 and 14 years old.]

28. On or about June 8, 2012, a follow up letter was sent via the US Mail to the SUBJECT PREMISES. The letter stated that the "undercover operation" had not received a

response to the catalogues. The letter offered an opportunity to receive additional catalogues if the recipient never in fact received them originally, but also included a section for the recipient to fill out requesting to be removed from the mailing list forever. No response to the letter was received by the undercover and no further attempts to contact or solicit Britto were made.

29. On or about March 11, 2013, Inspector Suboyu received, via US Mail, an envelope addressed to the "undercover operation". The envelope was postmarked Providence, Rhode Island on 05 MAR 2013 and attached to the envelope was a the same style printed return address label as seen in the March 2, 2012 mailing received by Inspector Suboyu. The label was in the name of Thomas Britto with an address of the SUBJECT PREMISES. The envelope contained a hand written completed movie order form with the following name, address, and email:

> *Thomas Britto*
> *195 Harvard Street*
> *New Bedford, Ma 02746*
> *EddAaron@hotmail.com*

The form also asked what computer operating system the purchaser used. In the line next to the question was written "Compaq PIII". In the order portion of the form, the purchaser requested two (2) specific movies, numbers 42 and 45, be sent to the above name and address for a purchase price of $25.00 each. The titles and descriptions as listed in the undercover catalogue are as follows:

> *MOVIE #42 ISLAND OF LITTLE BOY ORGIES, 12 AND 11 YEAR OLD BOYS MASTURBATE AND SUCK EACH OTHERS SMALL COCKS. THEY ARE JOINED BY ANOTHER 15 YEAR OLD BOY WHO GETS HIS COCK SUCKED BY BOTH BOYS. 12 YEAR OLD BOY GETS FUCKED IN THE ASS. CUM FILLS HIS BUNG HOLE!*

> *MOVIE #45 PAPA AND HIS TWO BOYS, TWO BEAUTIFUL BOYS 14 AND 10 YEARS OLD, MASTURBATE AND SUCK EACH OTHERS COCKS. WONDERFUL CLOSE-UPS OF THEIR TIGHT BUTT HOLES. DADDY COMES IN TO GET HIS COCK SUCKED THEN FUCKS BOTH BOYS IN THE ASS!! FULL ASS PENETRATION!*

30. Payment for the two (2) movies was also included in the envelope in the form of a USPS Money Order in the amount of $50.00. The money order was made out to the "undercover operation" and in the 'from' portion of the money order the following address was hand written:

> *195 Harvard St*
> *New Bedford, Ma 02746*

31. A check of USPS records indicates that the money order was purchased at the New Bedford Main Post Office located at 695 Pleasant Street, New Bedford, MA on March 2,

2013 shortly before 11:00 am. The New Bedford Main Post office is less than three (3) miles from the SUBJECT PREMISES.

## VERIFICATION OF TARGET AND SUBJECT PREMISES

32. A query of Thomas Britto with an address of 195 Harvard Street, New Bedford, MA using publicly and privately available search tools identified one result, namely Thomas E. Britto with a date of birth (DOB) in 1951 and social security number (SSN) xxx-xx-9695. The search results also list 195 Harvard Street as Britto's current address.

33. A query of the Massachusetts Registry of Motor vehicles (RMV) for Britto with the DOB and SSN mentioned above identified one result. Britto holds a suspended and non-renewable drivers license which lists a residential address of 195 Harvard Street, New Bedford, MA 02746.

34. Physical surveillance of the SUBJECT PREMISES on May 30, 2013 identified a 2004 Saturn Ion sedan, brown in color, MA License 98MC16, parked in the parking space assigned to 195 Harvard Street, New Bedford, MA.

35. A query with MA RMV identified the vehicle as registered to Kathleen Britto, DOB in 1952. A query using open source internet tools indicate that Kathleen Britto is the sister of Thomas Britto.

36. As of May 30, 2013, Inspector Connelly confirmed with US Postal Service officials that Thomas Britto is currently receiving mail at 195 Harvard Street, New Bedford, MA 02740.

37. On May 30, 2013, Inspector Connelly contacted the US Department of Housing and Urban Development (HUD) for information regarding Britto. A query of HUD databases were able to confirm that Thomas E Britto, DOB xx/xx/1951, SSN xxx-xx-9695, is residing at the SUBJECT PREMISES and in enrolled in the Public Housing Program which is administered by the New Bedford Housing Authority and has been so enrolled since November 18, 2006. Additionally, HUD records also list a Stephen Britto, DOB in 1954, SSN xxx-xx-8881, as residing in the same apartment. Queries of public and privately available databases as well as open source queries on the internet indicate that Stephen Britto is the brother of Thomas Britto. Thomas Britto is listed as the Head of Household and his qualification to receive rental assistance under the Public Housing Program was last verified on April 4, 2013.

## *CHARACTERISTICS COMMON TO INDIVIDUALS INVOLVED IN THE PRODUCTION, DISTRIBUTION, RECEIPT, OR POSSESSION OF CHILD PORNOGRAPHY AND CHILD SEXUAL EXPLOITATION OFFENSES*

38. As set forth above, probable cause exists to believe that an individual at 195 Harvard Street, New Bedford, MA has distributed, transported, received or possessed child pornography, or has attempted to commit these crimes. Based upon my knowledge, experience, and training in child exploitation investigations, and the training and experience of other law

10

enforcement officers with whom I have had discussions, I know that there are certain characteristics common to individuals involved in such crimes:

    a. Those who produce, distribute, transport, receive, or possess child pornography, or who attempt to commit these crimes may receive sexual gratification, stimulation, and satisfaction from contact with children; or from fantasies they may have viewing children engaged in sexual activity or in sexually suggestive poses, such as in person, in photographs, or other visual media; or from literature describing such activity.

    b. Those who produce, distribute, transport, receive, or possess child pornography, or who attempt to commit these crimes may collect sexually explicit or suggestive materials, in a variety of media, including photographs, magazines, motion pictures, videotapes, books, slides and/or drawings or other visual media. Such individuals oftentimes use these materials for their own sexual arousal and gratification. Further, they may use these materials to lower the inhibitions of children they are attempting to seduce, to arouse the selected child partner, or to demonstrate the desired sexual acts.

    c. Those who produce, distribute, transport, receive, or possess child pornography, or who attempt to commit these crimes often possess and maintain copies of child pornography material, that is, their pictures, films, video tapes, magazines, negatives, photographs, correspondence, mailing lists, books, tape recordings, etc., in the privacy and security of their home or some other secure location. These individuals typically retain pictures, films, photographs, negatives, magazines, correspondence, books, tape recordings, mailing lists, child erotica, and videotapes for many years.

    d. Likewise, those who produce, distribute, transport, receive, or possess child pornography, or who attempt to commit these crimes often maintain their collections that are in a digital or electronic format in a safe, secure and private environment, such as a computer and surrounding area. These collections are often maintained for several years and are kept close by, usually at the individual's residence, to enable the collector to view the collection, which is valued highly.

    e. Those who produce, distribute, transport, receive, or possess child pornography, or who attempt to commit these crimes also may correspond with and/or meet others to share information and materials; rarely destroy correspondence from other child pornography distributors/collectors; conceal such correspondence as they do their sexually explicit material; and often maintain lists of names, addresses, and telephone numbers of individuals with whom they have been in contact and who share the same interests in child pornography.

  f. Those who produce, distribute, transport, receive, or possess child pornography, or who attempt to commit these crimes prefer not to be without their child pornography for any prolonged time period. This behavior has been documented by law enforcement officers involved in the investigation of child pornography throughout the world.

  39. Based upon the historical information concerning Britto being indentified in a investigations into the "COA Company" and the "International Company" as well as Britto's attempted receipt of child pornography from the "undercover operation" I believe that Britto displays the characteristics common to individuals involved in the receipt or attempted receipt and possession of child pornography.

  40. Within ten days of issuance of this search warrant, I will oversee the controlled delivery of a mailing envelope addressed to Thomas Britto, 195 Harvard Street, New Bedford, Massachusetts 02746, USA, with a return address at the "undercover operation". The envelope will be delivered via United States mail. The mailing envelope will contain two DVD+R disks.

  41. A specific description of the package and its contents are as follows: I have reviewed the DVD+R disks ordered by the target. Based on my training and experience, the DVD depicts actual minors engaged in sexually explicit conduct, as defined in 18 U.S.C § 2256. Descriptions of the DVDs are as follows:

> #42 depicts two male children approximately 11 and 13 years old who masturbate and perform oral sex on one another. A third male child, approximately 15 years old, enters and the first two children perform oral sex on him. The 15 year old then has anal sex with one of the other children.

> #45 depicts two prepubescent male children masturbating and performing oral sex on one another. An adult male enters and has anal sex with both children.

  42. This mailing envelope described above will be kept under surveillance by your affiant and/or other law enforcement officers until it is received at the SUBJECT PREMISES.

## SEARCH AND SEIZURE OF COMPUTER SYSTEMS AND DATA

  43. Based on my knowledge, training, experience, and information provided to me by other agents, I know that computer files or remnants of such files can be recovered months or even years after they have been written, downloaded, saved, deleted, or viewed locally or over the Internet. I believe this is true for the following reasons:

12

      a.    Electronic files that have been downloaded to a storage medium can be stored for years at little or no cost. Furthermore, when users replace their computers, they can easily transfer the data from an old computer to a new computer.

      b.    Even after files have been deleted, they can be recovered months or years later using forensic tools. This is so because when a person "deletes" a file on a computer, the data contained in the file does not actually disappear; rather, that data remains on the storage medium until it is overwritten by new data, which might not occur for long periods of time. In addition, a computer's operating system may also keep a record of deleted data in a "swap" or "recovery" file.

      c.    Wholly apart from user-generated files, computer storage media – in particular, computers' internal hard drives – contain electronic evidence of how the computer has been used, what it has been used for, and who has used it. This evidence can take the form of operating system configurations, artifacts from operating system or application operation, file system data structures, and virtual memory "swap" or paging files. It is technically possible to delete this information, but computer users typically do not erase or delete this evidence because special software is usually required for that task.

      d.    Similarly, files that have been viewed over the Internet are sometimes automatically downloaded into a temporary Internet directory or "cache." The browser often maintains a fixed amount of hard drive space devoted to these files, and the files are overwritten only as they are replaced with more recently viewed Internet pages or if a user takes steps to delete them.

44.    Based on my knowledge and training and the experience of other agents with whom I have spoken, I am aware that in order to completely and accurately retrieve data maintained in computer hardware, computer software or storage media, to ensure the accuracy and completeness of such data, and to prevent the loss of the data either from accidental or programmed destruction, it is often necessary that computer hardware, computer software, computer-related documentation, and storage media ("computer equipment") be seized and subsequently processed by a qualified computer specialist in a laboratory setting, rather than in the location where it is seized. I believe this to be true for the following reasons:

      a.    The volume of evidence — storage media such as hard disks, flash drives, CD-ROMs, and DVD-ROMs can store the equivalent of thousands or, in some instances, millions of pages of information. Additionally, a user may seek to conceal evidence by storing it in random order or with deceptive file names. Searching authorities may need to examine all the stored data to determine which particular files are evidence, fruits, or

instrumentalities of criminal activity. This process can take weeks or months, depending on the volume of data stored, and it would be impractical to attempt this analysis on-site.

b. Technical requirements — analyzing computer hardware, computer software or storage media for criminal evidence is a highly technical process requiring expertise and a properly controlled environment. The vast array of computer hardware and software available requires even computer experts to specialize in some systems and applications. Thus, it is difficult to know, before the search, which expert possesses sufficient specialized skill to best analyze the system and its data. Furthermore, data analysis protocols are exacting procedures, designed to protect the integrity of the evidence and to recover even "hidden," deleted, compressed, password-protected, or encrypted files. Many commercial computer software programs also save data in unique formats that are not conducive to standard data searches. Additionally, computer evidence is extremely vulnerable to tampering or destruction, both from external sources and destructive code imbedded in the system as a "booby trap."

## CONCLUSION

45. Based on the aforementioned facts and circumstances, your Affiant respectfully submits that there is probable cause to believe that:

    a. violations of Title 18, United States Code, Section 2252(a) (2) and (a) (4) (B) and Title 18, United States Code, Section 2252A, have been committed and evidence of those violations is currently located at the SUBJECT PREMISES; and

    b. once the aforementioned envelope is delivered to the SUBJECT PREMISES, and the package is taken inside the residence, additional evidence of violations of Title 18, United States Code, Sections 2252 and 2252A will be found at the SUBJECT PREMISES.

46. Based upon the foregoing I, respectfully requests that this court issue an anticipatory search warrant for the SUBJECT PREMISES, more particularly described in Attachment A, authorizing the search and seizure of the items described in Attachment B.

*[signature]*
Michael J Connelly
US Postal Inspector
United States Postal Inspection Service

SWORN AND SUBSCRIBED TO BEFORE ME THIS 4th DAY OF
~~day of~~ June, 2013.

*[signature]*
HONORABLE JUDITH G. DEIN
UNITED STATES MAGISTRATE JUDGE


I have reviewed the files referenced in paragraph 29, and I find probable cause to believe they depict minors engaging in sexually explicit conduct and child pornography. The Affiant shall preserve the images and video provided to the Court, for the duration of the pendency of this matter, including any relevant appeal process.

*[signature]*
HONORABLE JUDITH G. DEIN
UNITED STATES MAGISTRATE JUDGE
June 4, 2013

## ATTACHMENT A

## DESCRIPTION OF THE PREMISES TO BE SEARCHED

**The location to be searched is:**

195 Harvard Street, New Bedford, MA is a two bedroom apartment in a two story multi family style dwelling located on Harvard Street, in the City of New Bedford, County of Bristol, Commonwealth of Massachusetts. The residence is a part of the Brickenwood Public Housing Development. Unit number 195 is located on the right side of the building while looking at the unit's front door and the exterior of the building where 195 is located has green siding with a grey shingled roof. The remainder of the building has a red brick exterior. There is a wrap around porch from the front door around the right side of the apartment and there is a white metal and glass storm door with the numbers 195 to the left side of the door affixed to the outside of the frame. There are three steps leading to the porch in front of the front door and a ramp to the right side of the residence.

## ATTACHMENT B

## ITEMS TO BE SEARCHED AND SEIZED

1. All computer hardware, computer software, computer-related documentation, and storage media. Off-site searching of these items shall be limited to searching for the items described in paragraph 2 - 6.

2. All records, in whatever form, and tangible objects that constitute evidence, fruits, or instrumentalities of violations of 18 U.S.C. §§ 2252 and 2252A, including, without limitation:

    a. All Child Pornography;

    b. All Child Erotica;

    c. All visual depictions of minors engaged in Sexually Explicit Conduct;

    d. All records and tangible objects concerning:

        i. Child Pornography;
        ii. Child Erotica; and
        iii. Visual depictions of minors engaged in Sexually Explicit Conduct;
        iv. Evidence of who used, owned, or controlled the computer equipment;
        v. Evidence of computer software that would allow others to control the items, evidence of the lack of such malicious software, and evidence of the presence or absence of security software designed to detect malicious software;
        vi. Evidence of the attachment of other computer hardware or storage media;
        vii. Evidence of counter-forensic programs and associated data that are designed to eliminate data;
        viii. Evidence of the times the computer equipment was used;
        ix. Passwords, encryption keys, and other access devices that may be necessary to access the computer equipment;
        x. Records and tangible objects concerning accounts held with companies providing Internet access or remote storage of either data or storage media; and

3. All records and tangible objects relating to any Internet service and/or on-line data storage providers, including, without limitation, credit/debit card account information and other information concerning payment;

4. All records and tangible objects concerning:

   a.  "Undercover Company";
   b.  "International Company";
   c.  Email address "eddaaron@hotmail.com"

5. All records and tangible objects relating to the ownership, occupancy, or use of the premises to be searched limited to utility bills, phone bills, rent payments, mortgage payments, photographs, insurance documentation, receipts, and check register.

6. One (1) mailing envelope addressed to Thomas Britto, 195 Harvard Street, New Bedford, Massachusetts 02746 with a return address "Undercover Operation", and its contents, to wit: two (2) DVD+R disk2.